UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:15-cr-00092-JMS-MJD |
| | ) | |
| STEVEN D. JONES, JR. | ) | |
| a/k/a STEVE D JONES, JR., | ) -01 | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Pending before the Court is Steven Jones's Motion for Compassionate Release- First Step Act, dkt. [57], filed pursuant to § 603 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018), which is codified at 18 U.S.C. § 3582(c)(1)(A). Because Mr. Jones has not shown extraordinary and compelling reasons for a sentence reduction, the motion is **DENIED**.

**I.**
**BACKGROUND**

On February 1, 2016, Mr. Jones pleaded guilty to one count of distribution of child pornography and one count of possession of child pornography. Dkt. 20.

Prior to sentencing, a Presentence Investigation Report ("PSR") was prepared. Dkt. 28. According to the PSR, on December 3, 2014, using a file-sharing program called "Gigatribe," Mr. Jones traded computer files containing child pornography with an undercover law enforcement officer. *Id.* at ¶¶ 7–9. The undercover officer was able to download 29 files that contained child pornography from the defendant. *Id.* at ¶ 9. On March 5, 2015, a search of Mr. Jones's residence uncovered several electronic devices that contained child pornography and

1

evidence of his trading activity. Mr. Jones's external hard drive contained 718 images and 341 videos, of which over 100 were of children under five years old. *Id.* at ¶ 11.

Mr. Jones had no criminal history. *Id.* at ¶¶ 38–39. However, during an interview with law enforcement, Mr. Jones admitted that he was addicted to child pornography and had been viewing it for ten years. *Id.* at ¶ 17.

The sentencing range for distribution of child pornography was five years to twenty years, and the sentencing range for possession of child pornography was up to twenty years. *Id.* at ¶ 67 (citing 18 U.S.C. § 2252(A)(b)(1)-(2)). The Court was required to impose a term of supervised release of 5 years to life. *Id.* at ¶ 69 (citing 18 U.S.C. § 3583(k))). Based on a total offense level of 37 and a criminal history category of I, the guideline imprisonment range was 210 to 262 months. *Id.* at ¶ 67

On June 8, 2016, the Court sentenced Mr. Jones to 96 months, finding that a variance was appropriate in light of Mr. Jones's expression of remorse and that the guidelines overstated the offense conduct. Dkts. 48, 49. The Court imposed 10 years of supervised release. Dkt. 48. The Court recommended that Mr. Jones be placed at FCI Elkton or FCI Milan and that he participate in sex offender treatment, vocational training, and Unicor. *Id.*

Mr. Jones is 30 years old. He is now incarcerated at FCI Milan. Mr. Jones has had no disciplinary action at FCI Milan, has worked, and has completed several education courses. Dkts. 57-4, 57-6. However, he has not received sex offender treatment. Dkt. 60-1 at ¶ 9. He began serving his sentence on or about July 24, 2016, and his current release date is projected to be May 18, 2023. *See* dkt. 57-6.

On July 29, 2020, Mr. Jones filed a motion for compassionate release. Dkt. 57. The United States responded on August 14, 2020, dkt. 60, and Mr. Jones replied on August 21, 2020, dkt. 64.

## II.
### DISCUSSION

In the motion, Mr. Jones argues that the Court should order his immediate release from incarceration because his chronic health conditions of kidney failure, hepatitis C, and hypertension make him vulnerable to serious health complications if he contracts COVID-19, creating extraordinary and compelling reasons warranting a sentence reduction. Dkt. 57. In addition, he argues that he is not a danger to the community and that the sentencing factors in 18 U.S.C. § 3553(a) favor his release. *Id.* In response, the Government argues that Mr. Jones has not presented extraordinary and compelling reasons for a sentence reduction because he does not actually have kidney failure, hepatitis C, or hypertension. Dkt. 60. The Government also argues that the § 3553(a) factors do not favor his release. *Id.*

> 18 U.S.C. § 3582(c) provides in relevant part:
>
> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>     **(i)** extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Mr. Jones submitted a written request for compassionate release to his custodian on May 15, 2020. Dkt. 57-3. He has not received a reply, and over thirty days have passed. Dkt. 57 at 19. The Government concedes that Mr. Jones has exhausted his administrative remedies. Dkt. 60 at 13. Accordingly, the merits of the motion for compassionate release are ripe for the Court's consideration under 18 U.S.C. § 3582(c).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes. While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release,[1] courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is

---

[1] Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies.  *See* 132 Stat. at 5239 (First Step Act § 603(b)).

otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). If the Court finds extraordinary and compelling reasons, the Court next must determine whether Mr. Jones is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.*, Application Note 1(D). This Court has held that it possesses the discretion to determine what qualifies as extraordinary and compelling for purposes of the catchall provision. *See United States v. Critchlow*, No. 2:15-cr-00006-JMS-CMM-1, Dkt. 52 at 8 (S.D. Ind. September 16, 2020).

Mr. Jones does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to him. Thus, the question is whether the catchall provision for extraordinary and compelling reasons applies in this case.

The Court concludes that it does not. According to the Centers for Disease Control and Prevention ("CDC"), chronic kidney disease places a person at a higher risk of severe illness from COVID-19, and hypertension or high blood pressure *might* increase one's risk of severe

5

illness. *Coronavirus Disease—People with Certain Medical Conditions* (last updated September 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. However, Mr. Jones does not have a current diagnosis of kidney failure or disease, hepatitis C,[2] or hypertension.

### a. Kidney Disease

When he was 12 years old, Mr. Jones was diagnosed with unilateral hydronephrosis and underwent surgery on his right kidney. Dkt. 57-2 at 4. A follow-up examination showed that his right kidney had some scarring, and his left kidney was enlarged to compensate for the lower functionality of the right kidney but was "otherwise normal." *Id.* at 3. While he has been incarcerated at FCI Milan, medical staff have tested Mr. Jones's blood and urine. Dkt. 57-7 at 8, 58. The test results from each of his two eGFR blood tests state that "[a] calculated GFR <60 suggests chronic kidney disease if found over a 3 month period," and Mr. Jones's results in 2016 and 2019 were ">60." *Id.* Thus, these tests indicate Mr. Jones does not have kidney disease. Mr. Jones argues that one of those tests included high creatinine levels, indicating that Mr. Jones is in stage 1 chronic kidney disease. Dkt. 64 at 2, citing dkt. 57-7 at 8 (July 30, 2019, test). The test shows Mr. Jones's creatinine level is 1.28 mg/dL, and it indicates that the normal range is .60-1.20 mg/dL. *Id.* However, creatinine levels vary by age and gender, and normal values for adult men are .9 to 1.3 mg/dL, indicating Mr. Jones's creatinine was within a normal range. *See* University of Rochester Medical Center, *Health Encyclopedia: Creatinine (Blood),* https://www.urmc.rochester.edu/encyclopedia/content.aspx?ContentTypeID=167&ContentID=creatinine_serum (last visited September 14, 2020). Medical staff at the prison have not diagnosed

---

[2] Mr. Jones's contention that he suffered from Hepatitis C seemed to result from a misreading of his BOP medical records. In his reply, counsel for Mr. Jones no longer argues that Mr. Jones suffers from Hepatitis C, so the Court will focus only on Mr. Jones's alleged kidney disease and hypertension. *See* dkt. at 3 ("While Mr. Jones's hepatitis C test came back negative, his other comorbidities still render him at an increased risk of severe illness from COVID-19.")

Mr. Jones with kidney disease, nor have they ordered any treatment for kidney disease. Dkt. 57-7. In short, it appears Mr. Jones's kidneys are functioning normally.

Accordingly, although Mr. Jones has a history of kidney problems, his medical records do not reflect that he currently has the kind of "chronic kidney disease" that would place him at higher risk for severe symptoms if he were to contract COVID-19.

### b. Hypertension

The parties also dispute whether Mr. Jones has hypertension. Mr. Jones's prison medical records do not reflect that he has been diagnosed with hypertension. Dkt. 57-7. Mr. Jones's prison medical records contain the results of three tests taken over four years. *Id.* His highest reading was recorded on August 2, 2016, at 140/90, which is considered "hypertension: stage 2." Dkt. 57-7 at 26; dkt. 57-8. There, the nurse noted that Mr. Jones "did seem nervous and his blood pressure and pulse were evidence of this assessment." *Id.* One month before that, his blood pressure was a normal 120/80. *Id.* at 36. His most recent reading was 136/84 on June 29, 2018, which is considered to be "hypertension: stage 1." *Id.* at 15; dkt. 57-8. Despite the two high readings, medical staff at FCI Milan have not conducted follow-up readings to determine whether Mr. Jones has hypertension, or whether the high readings resulted from "white coat hypertension," a scenario in which one's blood pressure results are abnormally high due to nervousness from a doctor's visit. *See* Mayo Clinic, *High blood pressure (hypertension): Diagnosis & Treatment*, https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/diagnosis-treatment/drc-20373417 (last visited September 16, 2020).

Even assuming Mr. Jones has hypertension, the Court finds hypertension alone is not an extraordinary and compelling reason to grant relief. Nearly half of American adults have hypertension. *See* Centers for Disease Control and Prevention, *Facts About Hypertension*, (last

7

reviewed Sept. 8, 2020), https://www.cdc.gov/bloodpressure/facts.htm. As mentioned before, individuals with high blood pressure might be at an increased risk for severe illness from COVID-19. But Mr. Jones is young and is otherwise in good health. The Court finds, consistent with other district courts, that hypertension and COVID-19 do not qualify as extraordinary and compelling reasons for compassionate release where the defendant does not suffer from other health or age-related risks. *See United States v. Hill*, 2020 WL 5104477, *2 (N.D. Ohio Aug. 31, 2020) (hypertension); *United States v. Thomas*, 2020 WL 3895781, *4 (W.D. Va. July 10, 2020) (hypertension); *United States v. Brown*, 2020 WL 3833284, *4 (D. Md. July 8, 2020) (hypertension and obesity); *and United States v. Peaks*, 2020 WL 2214231, *2 (E.D. Mich. May 7, 2020) (hypertension and obesity).

### c. Summary

Mr. Jones's medical records do not support his contention that he is suffering from chronic kidney disease or hypertension. Even assuming Mr. Jones has hypertension, the Court finds release is not warranted because he is young and otherwise healthy. Further, Mr. Jones has not tested positive for COVID-19 and is not incarcerated in a hotspot for COVID-19 infections.[3]

On the record as it currently stands, the Court concludes that Mr. Jones has not shown that extraordinary and compelling reasons warrant a sentence reduction. Thus, his motion must be denied. Because Mr. Jones has not demonstrated extraordinary and compelling reasons to justify his early release, the Court need not examine whether he would be a danger to the community or whether the sentencing factors in § 3553(a) favor release.

---

[3] As of the writing of this Order, FCI Milan has one confirmed active case. *See* https://www.bop.gov/coronavirus/ (last visited September 16, 2020).

## III.
### CONCLUSION

For the reasons stated above, Mr. Jones's motion for compassionate release, dkt. [57], is **denied**.

**IT IS SO ORDERED.**

Date: 9/17/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

All Electronically Registered Counsel